# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINWOOD WILKERSON,** | : | Civil No. 3:12-CV-1462 |
| **Plaintiff** | : | |
| v. | : | (Judge Mariani) |
| **CHARLES SAMUELS, JR., et al.,** | : | (Magistrate Judge Carlson) |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

This case comes before the court on a motion to reconsider (Doc. 13.), an order dismissing the plaintiff's *pro se* complaint. (Docs. 9 and 10.)[1] For the reasons set forth below, it s recommended that this motion to reconsider be denied.

### II. Statement of Facts and of the Case

The plaintiff, Linwood Wilkerson, is a federal inmate who was housed at the Federal Correctional Institution, Allenwood. On July 30, 2012, Wilkerson filed a *pro se* complaint with this court, along with a motion for leave to proceed *in forma pauperis*. The well-pleaded facts set forth in this *pro se* complaint were aptly

---

[1]We note that the plaintiff has also appealed this ruling, (Doc. 12.), but action on this appeal has been stayed pending resolution of the instant motion to reconsider. (Doc. 16.)

summarized by the district court when it dismissed that complaint, (Doc. 9.), in the following terms.

Wilkerson, an inmate who worked in UNICOR prison industries, alleged that he was verbally harassed by defendant Sawyer in August of 2008. Despite a warning from the UNICOR factory manager to defendant Sawyer not to persist in this conduct, Sawyer allegedly made harassing comments to Wilkerson six months later in February of 2009, inspiring Wilkerson to complaint to the prison UNICOR factory manager, Mr. Solomon.

Twenty months later, in October of 2010, Wilkerson alleged that he was working at the UNICOR factory when he was called for a visit, and in his haste left a wood chisel, a sharpened instrument in his tool box. According to Wilkerson, defendant Smoker then "fabricated" a misconduct report based upon the mishandling of this sharpened tool. Wilkerson was found guilty of this misconduct, sanctioned, and allegedly placed in a higher custody status. Alleging that he was the subject of a retaliatory discharge from his prison job, and had established a *prima facie* case of employment discrimination and retaliation under Title VII Wilkerson sought compensatory and punitive damages.

On October 9, 2012, the district court entered an opinion and order dismissing Wilkerson's complaint. (Docs. 9 and 10.) In this opinion and order, the court noted

Wilkerson's claims regarding alleged harassment in 2008 and 2009 were time-barred, and that his complaints arising out of the 2010 prison discipline meted out to him were barred by the "favorable termination" rule, since Wilkerson had not successfully challenged the outcome of these disciplinary hearings.

It is this ruling which Wilkerson now seeks to challenge in his motion for reconsideration. (Docs. 13 and 14.) Since Wilkerson has not met the exacting standard which applies to motions for reconsideration, for the reasons set forth below it is recommended that this motion be denied.

**II.     Discussion**

   **A.     Motions to Re-Consider–The Legal Standard**

The legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Typically such a motion should only be granted in three, narrowly defined circumstances, where there is either: "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice".

Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F. Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F. Supp. at 830. Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant

change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

### B. Wilkerson's Motion for Reconsideration Fails on Its Merits

Judged against these legal benchmarks Wilkerson's motion for reconsideration plainly fails. This motion fails for the most fundamental of reasons–Wilkerson simply has not met the legal requisites for such a motion by showing an intervening change in the controlling law; the availability of new evidence that was not available when the court granted the motion for summary judgment; or the need to correct a clear error of law or fact or to prevent manifest injustice. Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Quite the contrary, it is evident that this case was correctly decided by the district court. Indeed, entirely aside from the district court's stated rationale for its ruling, Wilkerson's claims fail on at least four other separate and independent grounds.

First, to the extent that Wilkerson alleges that staff verbally harassed the plaintiff, thereby exposing him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, this claim warrants only brief consideration since: "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment. See McBride v. Deer, 240 F.3d

5

1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")." Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006). See, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011); Ringgold v. Lamby, 565 F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007). Because Wilkerson simply alleges in some instances that he was verbally harassed by staff, and given that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006), these verbal harassment allegations fail to state a constitutional claim.

Second, Wilkerson's efforts to convert this alleged verbal harassment in prison industries into a Title VII workplace sexual harassment claim fail because an inmate like Wilkerson is "not an 'employee' under either Title VII or the ADEA because his relationship with the Bureau of Prisons, and therefore, with the defendants, arises out

6

of his status as an inmate, not an employee" Franks v. Oklahoma State Indus., 7 F.3d 971, 972 (10th Cir. 1993). Similarly, it is well-settled that "prisoners producing goods and services used by the prison should not be considered employees under the FLSA. See Gambetta v. Prison Rehabilitative Industries, 112 F.3d 1119, 1124-25 (11th Cir.1997); Danneskjold v. Hausrath, 82 F.3d 37, 43 (2d Cir.1996); Reimonenq v. Foti, 72 F.3d 472, 475 n. 3 (5th Cir.1996); Henthorn v. Department of Navy, 29 F.3d 682, 684-87 (D.C.Cir.1994); McMaster v. Minnesota, 30 F.3d 976, 980 (8th Cir.1994); Hale v. Arizona, 993 F.2d 1387, 1392-98 (9th Cir.1993) (en banc); Franks v. Oklahoma State Indus., 7 F.3d 971, 972 (10th Cir.1993); Harker v. State Use Indus., 990 F.2d 131, 133 (4th Cir.1993); Miller v. Dukakis, 961 F.2d 7, 8-9 (1st Cir.1992); Vanskike v. Peters, 974 F.2d 806, 809-10 (7th Cir.1992); but cf. Watson v. Graves, 909 F.2d 1549, 1554-55 (5th Cir.1990) (holding the FLSA applicable where the prisoners worked for an outside construction company in competition with other private employers and where this competition tended to undermine compliance with the FLSA)." Tourscher v. McCullough, 184 F.3d 236, 243 (3d Cir. 1999). Given this settled definition of the term employee under federal labor laws, one that excludes inmate laborers, Wilkerson's attempt to describe himself as an employee for purpose of Title VII liability are wholly unavailing.

Third, it is also apparent that Wilkerson's claims are time-barred. When conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations. As the United States Court of Appeals for the Third Circuit has explained when it affirmed the screening dismissal of a *pro se* complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Thus, Pennsylvania's two year statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256 Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may sua sponte dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir.2006) (citation omitted)(finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.").

Smith v. Delaware County Court, 260 F. App'x. 454, 455 (3d Cir. 2008); see also Jackson v. Fernandez, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009); Hurst v. City of Dover, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008).

It is well-settled that Bivens claims are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995). Applying these standards, many of the allegations in this *pro se* complaint are clearly subject to dismissal on statute of limitations grounds. Specifically, this complaint–which alleges misconduct by government actors beginning in August 2008, was first filed on July 30, 2012. Therefore, as to any allegations which pre-date July 30, 2010, on its face the complaint may be time-barred by the two year statute of limitations generally applicable to civil rights matters.

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or

9

forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001)

In this case, Wilkerson complains about an array of matters, which commenced in 2008, and ended sometime in 2010. With respect to these matters, the factual narrative set forth in the complaint plainly reveals that Wilkerson immediately

10

attached a high degree of significance and permanence to the events set forth in this complaint. Thus, Wilkerson seems to recite well-pleaded facts in his complaint which reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights, those violations were known and recognized by Wilkerson when they occurred. Thus, these events seem to have had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert his rights. Accordingly, in this case a straightforward application of the civil rights two-year statute of limitations would compel dismissal of all claims in this action which pre-date October 25, 2010, as untimely.

While Wilkerson may perhaps seek to save these time-barred claims by resort to the continuing violation theory, that tolling doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998). Here, Wilkerson's complaint indicates that he was immediately and completely aware of many of these events which he claims occurred in his presence in 2008 and 2009, assertions which on the face of the complaint demonstrate that many of these claims are time-barred. Therefore, these dated claims were properly dismissed by the court.

Moreover, we note that, to the extent Wilkerson endeavors to bring an employment discrimination claim under Title VII, he faces an even more exacting statute of limitations. "Title VII claims must be the subject of a charge filed with the EEOC within either 180 days or 300 days of the complained-of unlawful employment practice, depending upon whether the state has an anti-discrimination law, see Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir.1992), and a complaint must be filed in the district court within 90 days of receipt of a right-to-sue letter from the EEOC, see 42 U.S.C. § 2000e-5(f)(1)." Cardenas v. Massey, 269 F.3d 251, 255 (3d Cir. 2001). Thus, "[t]o pursue an employment discrimination claim under Title VII . . . , an employee must first file a charge with the EEOC within 300 days of an adverse employment action or of notification to the employee of such an action." Lebofsky v. City of Philadelphia, 394 F. App'x 935, 938 (3d Cir. 2010). Here, Wilkerson's pleadings do not indicate that he ever filed a charge with the EEOC and the chronology set forth in this pleadings plainly indicates that more than 300 days elapsed between this alleged workplace retaliation in October 2010, and the filing of this complaint on July 30, 2012. On these facts, a straightforward application of Title VII's statute of limitations also bars these claims, and compels dismissal of this complaint as time-barred.

Finally, we note that Wilkerson's retaliation claim fails because it impermissibly endeavors to link events that are separated by years in a single, seamless web of retaliation. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights by filing a false misconduct report must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).

With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim will fail whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson

v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010).

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component to a constitutional retaliation claim, causation, Wilkerson must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Thus:

> To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-7CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing

that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30, 2009).

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541,

at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation). See also DeFranco v. Wolfe, 387 F. App'x 147 (3d Cir. 2010)(denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); Alexander v. Fitch, No. 07-1732, 2010 WL 1257709 (W.D. Pa. March 26, 2010)(same); Carpenter v. Kloptoski, No. 08-2233, 2010 WL 891825 (M.D. Pa. March 10, 2010)(same).

Judged by these standards, Wilkerson's retaliation claim fails for two fundamental reasons. First, Wilkerson acknowledges that in October 2010 he failed to properly account of a chisel entrusted to his care, a violation of prison rules. Thus, on the face of Wilkerson's complaint there is clearly "some evidence" to support this

disciplinary infraction citation, a fact which as a matter of law "checkmates" any retaliation claim. Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010).

Moreover, Wilkerson's adverse disciplinary action occurred in October 2010, some twenty months after his last allegedly harassing workplace encounter with the defendants in February 2009. Where months and years separate the events which an inmate attempts to link together, this temporal void simply defeats a retaliation claim as a matter of law. Therefore, given the twenty month gulf in time which separates the events that Wilkerson attempts to link together; recognizing that the uncontradicted evidence further undermines any claim of retaliation since there plainly is "some evidence" to support the October 2010 disciplinary citation; and acknowledging that this court has flatly rejected far more specific and compelling inmate retaliation claims as too remote in time, See, DeFranco v. Wolfe, 387 F. App'x 147 (3d Cir. 2010)(denying inmate Z-code cell transfer retaliation claim, two months temporal proximity insufficient), Wilkerson's retaliation claims failed as a matter of law and was properly dismissed.

### IV. Recommendation

Accordingly, for the reasons set forth above, it is recommended that plaintiff's motion to reconsider (Doc. 13.), be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of December 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge