IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINWOOD WILKERSON,<br>Plaintiff, | : | 3:12-cv-1462 |
| v. | : | (Judge Mariani) |
| CHARLES E. SAMUELS, JR., *et al.*,<br>Defendants. | : | |

## MEMORANDUM

On July 30, 2012, Plaintiff, Linwood Wilkerson, an inmate presently confined at the

Federal Correctional Institution Allenwood Medium, ("FCI-Allenwood Medium"), in White

Deer, Pennsylvania, initiated the above action by filing a *Bivens*[1]-styled civil rights complaint

under the provisions of 28 U.S.C. § 1331. (Doc. 1). The named Defendants are: Charles E.

Samuels, Jr., Director of the Federal Bureau of Prisons, ("BOP"); R. Smoker, a supervisor in

the UNICOR factory at the Low Security Correctional Institution Allenwood, ("LSCI-

Allenwood"); and G. Solomon, retired former manager of the UNICOR prison factory at

LSCI-Allenwood. (*Id.*).

Presently pending before the Court is Defendants' motion to dismiss and for

summary judgment filed pursuant to Rules 12(b) and 56(a) of the Federal Rules of Civil

Procedure. (Doc. 64). For the reasons set forth below, the motion will be granted.

---

[1] *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens*-type action is the federal counterpart to an action filed under 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 862 (3d Cir. 1975); *Farmer v. Carlson*, 685 F. Supp. 1335, 1338 (M.D. Pa. 1988) (Nealon, J.).

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint on July 30, 2012. (Doc. 1). By Memorandum and Order dated October 9, 2012, this Court conducted an initial screening of the complaint pursuant to 28 U.S.C. § 1915 and determined that it failed to state a claim. (Docs. 9, 10). The Memorandum found that Plaintiff's *Bivens* claim was barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), that the retaliation claim was time-barred, and that Plaintiff could not claim the protections afforded under Title VII of the Civil Rights Act of 1964. (Doc. 9).

On October 31, 2012, Plaintiff filed a motion for reconsideration of this Court's October 9, 2012 Memorandum and Order. (Doc. 13). On December 12, 2012, Magistrate Judge Martin C. Carlson issued a Report recommending that the motion for reconsideration be denied. (Doc. 18). On February 12, 2013, this Court entered an Order adopting the Report and Recommendation and denying Plaintiff's motion for reconsideration. (Doc. 22).

Prior to filing his motion for reconsideration, Plaintiff appealed the dismissal of his complaint to the United States Court of Appeals for the Third Circuit. (Doc. 12). On May 3, 2013, the Third Circuit affirmed in part, vacated in part, and remanded Plaintiff's *Bivens* claim of retaliation for further consideration. (Doc. 28); *see also Wilkerson v. Samuels*, 524 Fed. Appx. 776 (3d Cir. 2013). The Third Circuit found that Plaintiff's *Bivens* claim of retaliation was not barred under *Heck* and was not time-barred. *Id.* The Court of Appeals

2

affirmed the dismissal of Plaintiff's Title VII claims. *Id.* The Third Circuit noted that, on

remand, this Court should determine whether Plaintiff's retaliation claim has merit and

whether Plaintiff exhausted his administrative remedies. *Id.* The Third Circuit described

Plaintiff's retaliation claim as follows:

> Wilkerson alleged that [Defendant] Smoker, a supervisor in the UNICOR
> factory in which Wilkerson worked at the Low Security Correctional Institution
> Allenwood ("LSCI Allenwood"), verbally harassed him. In response,
> Wilkerson filed a hostile work environment complaint with prison officials. He
> maintained that the complaint was ignored and that Smoker retaliated by filing
> a false incident report against him, resulting in disciplinary proceedings;
> Wilkerson was found guilty of the incident and lost his UNICOR job for six
> months. He also alleged that he was transferred to a higher custody
> institution as a result of the disciplinary proceedings.

*Id.* at 777.

On January 24, 2014, this Court entered an Order reopening this case, accepting

Plaintiff's supplement to the complaint filed on December 30, 2013, (Doc. 46),[2] and directing

service of the complaint. (Doc. 48).

On July 21, 2014, Defendants filed the instant motion to dismiss and for summary

judgment. (Doc. 64). Subsequently, on August 18, 2014, Defendants filed a statement of

material facts, along with a supporting brief and exhibits. (Docs. 67, 68). Defendants move

to dismiss Plaintiff's complaint based on lack of personal jurisdiction over Defendant

Samuels and lack of personal involvement of Defendants Samuels and Solomon. (Doc.

---

[2]   Plaintiff's supplement consists of copies of administrative remedies, which he claims is "further
verification of his exhaustion of his administrative remedies". (Doc. 46).

68). Defendants move for summary judgment based on Plaintiff's failure to exhaust administrative remedies with respect to the *Bivens* claim, failure to establish a claim of retaliation, and because they are entitled to qualified immunity. (*Id.*). On September 8, 2014, Plaintiff filed a brief in opposition to Defendants' motion and Defendants filed a reply brief on September 19, 2014. (Docs. 69, 70). As stated, Defendants' motion will be granted.

## II.    STANDARDS OF REVIEW

### A.    *Bivens Standard*

Plaintiff's claims are filed pursuant to 28 U.S.C. § 1331, in accordance with *Bivens*, 403 U.S. 388. Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. *Bivens*, 403 U.S. 388. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978); *George v. Rehiel*, 738 F.3d 562, 569 n.7 (3d Cir. 2013). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992); *Young v.*

4

*Keohane*, 809 F. Supp. 1185, 1200 n.16 (M.D. Pa. 1992). In order to state an actionable

*Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and

that the person who caused the deprivation acted under color of federal law. *See West v.*

*Atkins*, 487 U.S. 42, 48 (1988); *Young*, 809 F. Supp. at 1199.

*B.    Motion to Dismiss*

In rendering a decision on a motion to dismiss, a court should not inquire "whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66

(3d Cir. 1996). The court must accept as true the factual allegations in the complaint and

draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v.*

*Wilson*, 334 Fed. Appx. 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515

F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."); *George v. Rehiel*, 738 F.3d

562, 581 (3d Cir. 2013). "First, the factual and legal elements of a claim should be

separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the

court must then determine whether the complaint states a plausible claim for relief, which is

"a context-specific task that requires the reviewing court to draw on its judicial experience

5

and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

In this case, Defendants have framed their motion as one seeking dismissal under Rule 12(b) of the Federal Rules of Civil Procedure and for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. *See* (Doc. 64). When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the Court's intent to do so. *Id.*; *Garcia v. Newtown Twp.*, 2010 WL 785808, at *3 (E.D. Pa. 2010). However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Third Circuit Court of Appeals has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." *Latham v. United States*, 306 Fed. Appx. 716, 718 (3d Cir. 2009) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996)).

Defendants submit that this Court lacks personal jurisdiction over Defendant Samuels and he should therefore be dismissed from this action. (Doc. 68, pp. 9-11).

Defendants also submit that the complaint fails to establish the requisite personal

involvement of Defendants Samuels and Solomon and they should be dismissed. (*Id.* at pp.

11-15). Accordingly, the claims against these Defendants will be addressed under the

provisions of Federal Rule of Civil Procedure 12(b).

      Defendants move for summary judgment, and rely upon matters outside the

pleadings, with respect to the issues of exhaustion of administrative remedies, failure to

state a claim of retaliation, and qualified immunity. (*Id.* at pp. 15-28). Accordingly, the

Court will dispose of these issues in the context of summary judgment.

## C.    *Motion for Summary Judgment*

      Summary judgment should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is "no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard

provides that the mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d

Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect

the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers,*

*Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and

Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

      The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a

showing has been made, the non-moving party must go beyond the pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific

material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at

324; *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating

that the non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 Fed. Appx. 177, 179 (3d Cir.

2008). The party opposing the motion must produce evidence to show the existence of

every element essential to its case, which it bears the burden of proving at trial, because "a

complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*,

967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on

allegations or denials in its own pleadings; rather, its response must . . . set out specific

facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, \*2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## III.   ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that, in August 2008, Defendant Smoker verbally harassed him and that the UNICOR factory manager at that time warned Defendant Smoker not to say anything further to Plaintiff. (Doc. 1, pp. 2-3). Plaintiff alleges that, despite the warning, in February 2009, Defendant Smoker made a comment to him that prompted Plaintiff to complain to the new factory manager, Defendant Solomon. (*Id.* at 3-4). Plaintiff claims that he also informed Defendant Solomon that Defendant Smoker's actions caused adverse effects to him psychologically, including nightmares of Defendant Smoker sexually assaulting him, and that Plaintiff then filed a complaint against Smoker concerning the hostile work environment, but the complaint was ignored. (*Id.* at 4).

Plaintiff alleges that, on October 15, 2010, he was working in the UNICOR factory when he received a call for a visit. (*Id.* at 5). He explains that, "[i]n his haste to make the visit, [he] inadvertently left a ½ inch wood chisel in his tool box in his assigned area." (*Id.*).

9

However, he alleges that when he arrived at the visiting room, he immediately asked an officer to call Defendant Smoker to inform him that he had left the tool in his box. (Id.). Plaintiff then explains that, when he returned from the visit, Defendant Smoker had fabricated an incident report against him charging him with failing to perform work as instructed, in violation of Code 311, and lying or providing a false statement to a staff member, in violation of Code 313. (Id. at 6, 20, Incident Report dated October 15, 2010). Plaintiff alleges that Defendant Smoker wrote the incident report as an act of "retaliation for his writing Mr. Smoker up for his sexually explicit, and racist comments which formed the basis of the initial write-up." (Id. at 7). Plaintiff alleges that he was fired as a result of the "fraudulent misrepresentations made in the incident report." (Id. at 6). He also alleges that "the incident report was instrumental in his transfer to a higher custody institution." (Id. at 8).

Plaintiff sets forth arguments attempting to refute both sets of charges against him in his complaint. (Id. at 6-7). The complaint also includes a section concerning the elements of a hostile work environment claim and sexual harassment claim.[3] (Id. at 8-15).

For relief, Plaintiff requests compensatory and punitive damages, as well as his costs. (Id. at 16).

_____

[3]    As stated, the Third Circuit Court of Appeals affirmed this Court's dismissal of Plaintiff's Title VII claims. Wilkerson, 524 Fed. Appx. at 779. Thus, the only remaining claim is Plaintiff's Bivens claim of retaliation.

10

## IV.    STATEMENT OF UNDISPUTED FACTS

Except where expressly noted as disputed, the following facts of record are undisputed.

Plaintiff is a federal inmate housed at FCI-Allenwood and is currently serving a sentence of two hundred eleven (211) months.  (Doc. 67-1, Ex. D, Declaration of Michael S. Romano, p. 1, ¶ 2; Doc. 67-1, Ex. D, Attach. 1, Public Information Inmate Data).

Defendant Samuels is the Director of the Federal Bureau of Prisons and is responsible for the general supervisory management and oversight of the agency. (Statement of Material Facts ("SMF"), ¶¶ 22, 23; Doc. 67-1, Ex. B, Declaration of Charles Samuels, Jr., ¶¶ 1, 2).  Defendant Samuels delegates many tasks to wardens and prison staff and does not have primary responsibility for inmates.  (SMF ¶¶ 24, 25; Doc. 67-1, Ex. B, Declaration of Charles Samuels, Jr., ¶ 2).  Defendants Samuels' business office is located in Washington, D.C., and he does not reside, work, or own real property in the State of Pennsylvania.  (SMF ¶ 26, Doc. 67-1, Ex. B, Declaration of Charles Samuels, Jr., ¶ 3).

Defendant Solomon was the factory manager at LSCI-Allenwood from 2008 through 2010, and retired from his position at LSCI-Allenwood on November 30, 2010.  (SMF ¶ 27; Doc. 67-1, Ex. C, Declaration of G. Solomon, ¶¶ 1, 2).  Defendant Solomon does not have access to BOP records.  (SMF ¶ 28; Doc. 67-1, Ex. C, Declaration of G. Solomon, ¶ 1). The parties dispute whether Defendant Solomon recalls Plaintiff bringing a complaint to him

11

against Defendant Smoker. (SMF ¶ 29; Doc. 67-1, Ex. C, Declaration of G. Solomon, ¶ 2; Doc. 69, p. 2; Doc. 70, pp. 5-6).

Plaintiff worked in the UNICOR factory at LSCI-Allenwood. (Doc. 67, SMF ¶ 1). In August 2008 and February 2009, Plaintiff filed grievances against Defendant Smoker complaining about comments that Defendant Smoker allegedly made to him, creating a hostile work environment. (SMF ¶ 1). The parties dispute whether Defendant Smoker actually made threatening or derogatory comments to Plaintiff. (Doc. 69, p. 13, ¶ 1; Doc. 70, p. 5).

On October 15, 2010, Plaintiff was working in the UNICOR factory when he received a call for a visit. (SMF ¶ 2). Due to loud noise in the factory and the fact that Plaintiff was wearing earbuds, he did not initially hear his name being called, but eventually realized that he was being called for a visit. (SMF ¶ 3; Doc. 69, p. 14, ¶ 15). Plaintiff rushed to make the visit and "inadvertently left a ½ inch wood chisel in his tool box". (SMF ¶ 4; Doc. 69, p. 14, ¶ 16). When Plaintiff arrived to the visiting room, he asked an officer to call Defendant Smoker and inform him that he left the chisel in his tool box. (SMF ¶ 5; Doc. 69, p. 14, ¶ 17). When Plaintiff returned to the UNICOR factory, Defendant Smoker had written an incident report against him regarding the chisel left in his tool box. (SMF ¶ 6; Doc. 69, p. 14, ¶ 18). The incident report charged Plaintiff with failing to perform work as instructed, in violation of Code 311, and lying or providing a false statement to a staff member, in violation

12

of Code 313. (SMF ¶ 20; Doc. 67-1, Ex. A, Attach. 1, Incident Report dated October 15, 2010). The parties dispute whether Defendant Smoker issued the incident report in retaliation for Plaintiff's previous complaints against him. (Doc. 69, p. 15, ¶ 19; Doc. 70, pp. 6-7). The parties also dispute whether the incident report contains "fraudulent misrepresentations" and whether Plaintiff lost his job based on false statements in the report. (Doc. 1, p. 6; SMF ¶ 9; Doc. 69, p. 14, ¶¶ 18-21; Doc. 70, pp. 7-8).

On October 22, 2010, an initial investigation was conducted on Incident Report Number 2078590. (Doc. 67-1, Ex. A, Attach. 1, Incident Report, at Sections 23-27). Plaintiff was advised of his rights, stated that he understood his rights, and provided the following statement, "I'm not disputing it. I forgot about that tool, and they did say something to me the last time I forgot". (*Id.* at Sections 23, 24). At the conclusion of the investigation, the report was forwarded to the Unit Discipline Committee, ("UDC"), for further disposition. (*Id.* at Section 27).

On October 25, 2010, Plaintiff was provided with an initial hearing before the UDC on Incident Report Number 2078590. (*Id.* at Sections 17-21). The UDC provided Plaintiff the opportunity to make a statement, to which he responded, "I accidentally forgot to turn in the tool, I was in a rush to get to my visit. I did tell the staff member I turned all my tools in, because I thought I did." (*Id.* at Section 17). Based on Plaintiff's admission that he forgot to return his tool and that he told staff that all of his tools were turned in, the UDC found that

13

Plaintiff committed the prohibited acts of failing to perform work as instructed, and lying or providing a false statement to a staff member. (*Id.* at Sections 18, 19). As a result of the findings of the UDC, Plaintiff lost his job at the UNICOR factory for six (6) months. (*Id.* at Section 20).

During Plaintiff's incarceration with the BOP, he filed forty-five (45) administrative remedies. (SMF ¶ 45; Doc. 67-1, Ex. D, Attach. 3, Administrative Remedy Generalized Retrieval; Doc. 67-1, Ex. D, Declaration of Michael S. Romano, p. 3, ¶ 6). Fifteen (15) of those administrative remedies were filed at the BOP Central Office level, and thirteen (13) were rejected by the BOP Central Office for various reasons. (SMF ¶ 46; Doc. 67-1, Ex. D, Attach. 3, Administrative Remedy Generalized Retrieval; Doc. 67-1, Ex. D, Declaration of Michael S. Romano, p. 3, ¶¶ 6, 7). Plaintiff fully exhausted two complaints regarding "teachers not teaching" and "improper medical care - wants MRI". (SMF ¶¶ 47, 48; Doc. 68, p. 17; Doc. 67-1, Ex. D, Declaration of Michael S. Romano, p. 3, ¶ 7; Doc. 67-1, pp. 21-23). The parties dispute whether Plaintiff exhausted his administrative remedies with respect to the retaliation claim at issue. (SMF ¶¶ 44, 47; Doc. 69, pp. 2-3; Doc. 70, pp. 8-9).

## V.   DISCUSSION

### A.   *Failure to Establish Personal Jurisdiction over Defendant Samuels*

Defendants initially argue that this Court lacks personal jurisdiction over Defendant Samuels. (Doc. 68, pp. 9-11). Defendants state that Samuels is employed as the Director

14

of the BOP in Washington, D.C., and neither lives nor maintains a place of business in

Pennsylvania. (*Id.* at pp. 10-11). Defendants argue that "Samuels did not have sufficient

contacts with the Commonwealth of Pennsylvania for the Court to retain personal

jurisdiction over him." (*Id.* at p. 11).

Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322, "permits

Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the

constitutional limits of the Due Process Clause of the Fourteenth Amendment.'" *Pennzoil*

*Products Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (quoting *Mellon*

*Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)). The Due

Process Clause requires that nonresident defendants have "certain minimum contacts with

the forum state such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d

Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Having

minimum contacts with another state provides 'fair warning' to a defendant that he or she

may be subject to suit in that state." *Id.* at 300 (citing *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 472 (1985)). Federal courts have recognized two types of personal jurisdiction,

namely general and specific. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

General jurisdiction is appropriate when the defendant's contacts with the forum are

"continuous and systematic" and when the cause of action "arises from the defendant's

15

non-forum related activities." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151 (3d Cir. 1996). Specific jurisdiction is properly exercised when the plaintiffs cause of action arises from the defendant's forum-related activities, "such that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

   In support of the instant motion, Defendants have submitted a declaration of Defendant Samuels in which he declares that his business office is located at the BOP Central Office in Washington, D.C., and he confirms that he does not live, own property, nor conduct business in the Commonwealth of Pennsylvania.[4] (Doc. 67-1, Ex. B, Declaration of Charles Samuels, Jr., ¶ 3); *see also* (Doc. 67-1, Ex. D, Declaration of Michael S. Romano, p. 12, ¶ 10). "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citations omitted). In the brief in opposition to Defendants' motion, Plaintiff has neither addressed nor explained how Defendant Samuels has any contacts with the State of Pennsylvania such that he reasonably would anticipate being haled into Court here. *See* (Doc. 69). Plaintiff has failed to prove that Defendant Samuels has the requisite

---

   [4]   The Court notes that it may consider affidavits in determining the existence of personal jurisdiction. *See Patterson ex rel. Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990); *Hairston v. Lappin*, 2013 WL 5701637, *16 n.6 (M.D. Pa. 2013).

16

minimum contacts to subject him to the jurisdiction of this Court. *See Mellon Bank*, 983

F.2d at 554 ("[w]here the defendant has raised a jurisdictional defense, the plaintiff bears

the burden of establishing either that the cause of action arose from the defendant's

forum-related activities (specific jurisdiction) or that the defendant has 'continuous and

systematic' contacts with the forum state (general jurisdiction)."). Moreover, although

Defendant Samuels is named in the caption of the complaint, Plaintiff fails to set forth any

allegations against him. *See* (Doc. 1). Thus, this Court lacks personal jurisdiction over

Defendants Samuels and he is entitled to dismissal on this ground.

B.      *Failure to Allege the Personal Involvement of Defendant Solomon*

"In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has

deprived him of a federal right, and that the person who caused the deprivation acted under

color of federal law." *Azzara v. Scism*, 2012 WL 722342, *2 (M.D. Pa. 2012) (Nealon, J.),

*citing West*, 487 U.S. at 48; *Young*, 809 F. Supp. at 1199; *Sharpe v. Costello*, 2007 WL

1098961, *3 (M.D. Pa. 2007). "A defendant in a civil rights action must have personal

involvement in the alleged wrongs; liability cannot be predicated solely on the operation of

*respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing

*Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *Mitchell v. Beard*, 492 Fed. Appx. 230, 235

(3d Cir. 2012) (finding that the prisoner's allegations against four of the DOC defendants

"that they are liable for improperly supervising those directly responsible for his injuries"

17

were insufficient to state a claim).  As explained in *Rode*:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs .... Personal involvement can
> be shown through allegations of personal direction or of actual
> knowledge and acquiescence.  Allegations of participation or
> actual knowledge and acquiescence, however, must be made
> with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Additionally, it is well established that a plaintiff may not sue to recover monetary

damages against federal officials in their official capacities because *Bivens* claims against

the United States are barred by sovereign immunity.[5]  *Williams v. Warmerdorf, et al.*, 2008

U.S. Dist. LEXIS 76283, *5 (M.D. Pa. 2008) (Munley, J.) (citing *F.D.I.C. v. Meyer*, 510 U.S.

471, 483 (1994); *Jaffee v. U.S.*, 592 F.2d 712, 717 (3d Cir. 1979)).  To proceed against

federal officials in their individual capacities, the plaintiff must allege "personal direction or . .

. actual knowledge and acquiescence of constitutional violations." *Bartholomew v. Fed.*

*Bureau of Prisons*, 2008 U.S. Dist. LEXIS 72787, 15-16 (M.D. Pa. 2008) (Kane, J.) (granting

"summary judgment on the *Bivens* claims because [the defendants] are immune from suit in

their official capacities and because they were not personally involved in any constitutional

deprivation").

---

[5]   Plaintiff appears to set forth claims against the Defendants only in their individual capacities.
*See* (Doc. 1).  However, in the event that Plaintiff intended to sue the Defendants in their official capacities,
because the complaint seeks compensatory and punitive relief, Defendant Solomon would be entitled to
dismissal on the *Bivens* claim because he is immune from suit in his official capacity.

Defendant Solomon asserts that Plaintiff failed to allege his personal involvement and the doctrine of *respondeat superior* cannot serve as the basis of liability in a *Bivens* action. (Doc. 68, pp. 11-15); *Bivens*, 403 U.S. 388; *see also Davis v. Miner*, 2007 U.S. Dist. LEXIS 30789, 1-2 (M.D. Pa. 2007) (Rambo, J.). The motion states that "plaintiff must allege specific actions committed by each defendant which violated his constitutional rights in order to state a claim ... [and that] a prerequisite to establishing [] liability is the personal involvement of the defendant in the alleged deprivation." (Doc. 68, p. 12) (citing *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992), *affirmed* 980 F.2d 722 (3d Cir. 1992)). Defendants argue that Plaintiff does not allege that Solomon was personally involved in retaliating against him for previous grievances he filed against Defendant Smoker. (Doc. 68, p. 13). Further, to the extent that liability is grounded on the supervisory position of Solomon, Defendants argue that any allegation of his participation in the grievance or appeal process is insufficient to establish his personal involvement. (*Id.* at pp. 12-14) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

Plaintiff's allegations against Defendant Solomon relate to his hostile work environment claim, which was dismissed by this Court and affirmed by the Third Circuit Court of Appeals.[6] Plaintiff does not allege that Defendant Solomon was involved in his

---

[6] Regarding the hostile work environment claim, the complaint pleads that Defendant Solomon, in his capacity as UNICOR factory manager, "was complicit, complacent, and did virtually nothing to settle the [hostile working relationship between Plaintiff and Defendant Smoker]". (Doc. 1, p. 9).

retaliatory termination. As summarized by the Third Circuit Court, Plaintiff's retaliation claim alleges that Defendant Smoker verbally harassed him, Plaintiff filed a complaint against Defendant Smoker, and Defendant Smoker retaliated by filing a false incident report against him, which ultimately resulted in the loss of his UNICOR job and alleged transfer to a higher custody institution. *Wilkerson*, 524 Fed. Appx. at 777. Thus, all of Plaintiff's allegations regarding his retaliation claim relate to Defendant Smoker, which is confirmed by the evidence submitted by Plaintiff.

Plaintiff provided an affidavit wherein he states that he "was retaliated against in the form of a[n] incident report filed at the hands of Mr. Smoker". (Doc. 1, p. 19, Affidavit of Linwood Wilkerson). Plaintiff also provided copies of administrative remedies explaining that he "plan[s] to bring retaliation charges against UNICOR Foreman, Mr. Smoker" and he intended "to bring civil charges against Mr. Smoker for har[]assment and retaliation". (Doc. 46, pp. 7, 12). The complaint does not allege that Defendant Solomon was engaged in any acts of retaliation against him, nor does it allege that Defendant Solomon was responsible for the alleged retaliation.

Plaintiff has not submitted evidence to contradict the affidavit of Defendant Solomon, in which he states that he was not personally involved in the alleged retaliation. Moreover, in his brief in opposition to Defendants' motion, Plaintiff has not addressed Defendants' argument regarding lack of personal involvement of Solomon. *See* (Doc. 69). Because

Plaintiff fails to allege that Defendant Solomon was aware of, condoned, participated in, or acquiesced in the termination of Plaintiff from his prison job, Defendant Solomon is entitled to dismissal on this ground.

To the extent that Plaintiff is attempting to establish the personal involvement of Defendant Solomon by way of his participation in the grievance process, the filing of a grievance is not sufficient to show the actual knowledge necessary to establish personal involvement. *See White v. Bledsoe*, 2011 WL 2292279 (M.D. Pa. 2011) (Kane, J.) (holding that summary judgment was warranted in favor of the defendant for his role in responding to appeal of inmate's designation to SMU), *citing Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that they were involved in the underlying allegedly unconstitutional conduct); *Burnside v. Moser*, 138 Fed. Appx. 414, 416 (3d Cir. 2005) (ruling that failure of prison official to process an administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

In summation, there are no allegations of personal involvement of Defendant Solomon in the retaliation claim, which is necessary for Plaintiff to bring suit against him in

his individual capacity. *Respondeat superior* cannot form the basis of a *Bivens* claim; therefore, liability may not grounded on Defendant Solomon's supervisory position. The motion to dismiss will therefore be granted as to Defendant Solomon. *See Washington v. Showalter*, 494 Fed. Appx. 268 (3d Cir. 2012) (affirming the District Court's dismissal of certain defendants for lack of personal involvement in the alleged constitutional violation).

C. *Failure to Exhaust Bivens Claim*

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended 42 U.S.C. § 1997e, requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. The Act specifically provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or of the relief sought. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); *Goodwin v. Zickenfoose*, 2013 WL 5719367, *2 (M.D. Pa. 2013) (Munley, J.). "[I]t is beyond the power of ... any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Failure to exhaust administrative remedies is an affirmative defense that must be

22

pled and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)

(reasoning that "[p]rison officials are likely to have greater legal expertise and, as important,

superior access to prison administrative records in comparison to prisoners").

Further, the PLRA mandates that an inmate "properly" exhaust administrative

remedies before filing suit in federal court, which demands compliance with an agency's

deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v.

Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural

default component); *Rivera v. Pa. Dep't of Corr.*, 388 Fed. Appx. 107, 108 (3d Cir. 2010)

("An inmate must exhaust his administrative remedies *prior* to filing a civil action in federal

court.") (emphasis added). A procedural default by the prisoner, either through late or

improper filings, bars the prisoner from bringing a claim in federal court unless equitable

considerations warrant review of the claim. *McKinney v. Kelchner*, 2007 U.S. Dist. LEXIS

71958, *8 (M.D. Pa. 2007) (citing *Spruill*, 372 F.3d at 227-32; *Camp v. Brennan*, 219 F.3d

279 (3d Cir. 2000)).

The Bureau of Prisons has established an Administrative Remedy Procedure

through which an inmate may seek formal review of a complaint which relates to any aspect

of his imprisonment if less formal procedures have not resolved the matter.  This procedure

applies to all inmates confined in Bureau of Prisons institutions.  28 C.F.R. § 542.10.

Inmates are to informally present their complaints to the staff and the staff must attempt to

resolve the matter. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate

must then execute the appropriate form to bring the matter to the attention of the warden.

28 C.F.R. § 542.14(b). The warden must then respond to the inmate's complaint within

twenty (20) days. *Id.* at § 542.18. If an inmate is dissatisfied with the warden's response,

he may then appeal to the Regional Director. *Id.* at § 542.15. If the response of the

Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the

Federal Bureau of Prisons, which is the final administrative appeal in the Bureau of Prisons.

*Id.*

Defendants have demonstrated that Plaintiff fully exhausted administrative remedies

with regard to his complaints of "teachers not teaching" and "improper medical care - wants

MRI". (SMF ¶¶ 47, 48; Doc. 68, p. 17; Doc. 67-1, Ex. D, Declaration of Michael S. Romano,

p. 3, ¶ 7; Doc. 67-1, pp. 21-23). These remedies were fully exhausted by their denial at the

BOP Central Office level. (*Id.*).

Defendants have also demonstrated that Plaintiff failed to exhaust his administrative

remedies with respect to his retaliation claim. (Doc. 68, pp. 15, 17; Doc. 67-1, Ex. D,

Declaration of Michael S. Romano, p. 4, ¶¶ 8, 9; Doc. 67-1, pp. 24, 27).

Defendants have submitted a declaration of Michael S. Romano, Attorney Advisor at

USP-Lewisburg, in which he declares that a review of the Department records confirms that

Plaintiff filed forty-five (45) administrative remedies during his incarceration with the BOP,

24

with fifteen (15) remedies filed at the national level. (Doc. 67-1, Ex. D, Declaration of Michael S. Romano, pp. 10-11, ¶¶ 4, 6). Attorney Romano explains that Plaintiff fully exhausted only two (2) administrative remedies, those related to "teachers not teaching" and "improper medical care - wants MRI". (*Id.* at ¶ 7). Attorney Romano further declares that he contacted the Special Investigative Agent for LSCI-Allenwood, who indicated that there is no record of a complaint filed by Plaintiff against Defendant Smoker. (*Id.* at ¶¶ 8, 9).

In opposing the instant motion, Plaintiff argues that he has exhausted all administrative remedies with regard to his *Bivens* claim of retaliation. (Doc. 69, pp. 2-3). Plaintiff submitted an affidavit providing that he "substantially compl[ied] with the procedural requirements" of the BOP grievance process. (Doc. 69, Ex. 3). He further states that he submitted copies of the administrative remedies he *tried* exhausting, as well as a copy of the administrative tort claim he filed. (*Id.*); *see also* (Doc. 46). Plaintiff appears to claim that prison authorities thwarted his efforts to exhaust his administrative remedies. (*Id.*). In support of his exhaustion argument, Plaintiff submitted a copy of an administrative remedy filed at the institution level, and copies of his appeals to the BOP Regional Office. (*Id.*). However, Plaintiff does not provide the warden's response nor the BOP Regional Office's responses or rejection notices to these administrative remedies. (*Id.*).

The Court summarizes the evidence submitted by Plaintiff, and the exhibits

submitted by Defendants, as follows:

On October 21, 2010, Plaintiff filed Administrative Remedy No. 612822-F1 at the institution level, requesting that he be reinstated to his job at UNICOR. (Doc. 46, p. 5). Plaintiff did not provide the warden's response to this remedy.

On November 9, 2010, Plaintiff filed Regional Administrative Remedy Appeal No. 612822-R1 with staff at the BOP's Northeast Regional Office, requesting that the incident report charging him with failing to perform work as instructed and lying or producing false statements to a staff member, be overturned. (Doc. 46, p. 10). Plaintiff did not provide the BOP Regional Office's response and/or rejection notice.

On January 5, 2011, Plaintiff filed Regional Administrative Remedy Appeal No. 612822-R3 with staff at the BOP's Northeast Regional Office, requesting to be reinstated to his prison job at UNICOR. (Doc. 46, p. 12). Plaintiff did not provide the BOP Regional Office's response and/or rejection notice.

On January 20, 2011, Plaintiff filed Administrative Remedy Appeal No. 612822-R3 with the Central Office, again requesting to be reinstated to his prison job at UNICOR. (Doc. 46, p. 7). Plaintiff did not provide the BOP Regional Office's response and/or rejection notice.

On February 28, 2011, Plaintiff filed Administrative Remedy No. 612822-A1, requesting to be reinstated to his prison job at UNICOR and claiming staff misconduct.

26

(Doc. 67-1, Ex. D, Attach. 3, Administrative Remedy Generalized Retrieval, p. 24).  On April

29, 2010, Administrative Remedy No. 612822-A1 was rejected as untimely, explaining that

Plaintiff must provide staff verification that the untimely filing of the appeal was not his fault.

(*Id.*).

In March, 2011, Plaintiff filed Regional Administrative Remedy Appeal No.

612822-R4 with staff at the BOP's Northeast Regional Office, stating that he received their

rejection notice requesting a copy of his BP-9.  (Doc. 46, p. 11).  Plaintiff indicated that he

therefore sent a copy of his BP-9 form to the BOP Regional Office.  (*Id.*).  Plaintiff also

noted that he mistakenly received a BP-10 belonging to another inmate.  (*Id.*).  Plaintiff did

not provide the BOP Regional Office's response or rejection notice.

On May 20, 2011, Plaintiff filed Administrative Remedy No. 612822-A2, complaining

of issues with the Unit Discipline Committee.  (Doc. 67-1, Ex. D, Attach. 3, Administrative

Remedy Generalized Retrieval, p. 24).  On July 12, 2011, Administrative Remedy No.

612822-A2 was rejected.  (*Id.*).

Also on May 20, 2011, Plaintiff filed Administrative Remedy No. 612822-A5,

complaining of issues with the Unit Discipline Committee.  (Doc. 67-1, Ex. D, Attach. 3,

Administrative Remedy Generalized Retrieval, p. 25).  On December 1, 2011,

Administrative Remedy No. 612822-A5 was rejected, explaining that Plaintiff should be

counseled by his unit manager on proper procedures with the administrative remedy

process. (Id.). It was further noted that Administrative Remedy No. 612822 was filed incorrectly. (Id.).

On August 1, 2011, Plaintiff filed Administrative Remedy No. 612822-A3, complaining of issues with the Unit Discipline Committee. (Doc. 67-1, Ex. D, Attach. 3, Administrative Remedy Generalized Retrieval, p. 26). On September 8, 2011, Administrative Remedy No. 612822-A3 was rejected. (Id.).

On October 3, 2011, Plaintiff filed Administrative Remedy No. 612822-A4, complaining of issues with the Unit Discipline Committee. (Doc. 67-1, Ex. D, Attach. 3, Administrative Remedy Generalized Retrieval, p. 26). On October 14, 2011, Administrative Remedy No. 612822-A4 was rejected as untimely, explaining that staff must verify the reasons why the untimely submission was not Plaintiff's fault. (Id.).

On January 9, 2012, Plaintiff filed Administrative Remedy No. 612822-A6, requesting to be reinstated to prison job at UNICOR and complaining of staff misconduct. (Doc. 67-1, Ex. D, Attach. 3, Administrative Remedy Generalized Retrieval, p. 27). On February 1, 2012, Administrative Remedy No. 612822-A6 was rejected, explaining that Plaintiff's appeal was in poor condition, could not be processed, and was untimely. (Id.).

Plaintiff also provided the BOP Regional Counsel's June 12, 2012 response to his administrative tort claim. (Doc. 46, p. 6). The claim was denied for failure to state an actionable claim under the Federal Tort Claims Act. (Id.). It was further noted that Plaintiff

failed to state what actual injuries/health problems he incurred. (*Id.*).

Regarding Plaintiff's claim that prison staff allegedly thwarted his efforts to comply with the administrative remedy process, the Third Circuit Court of Appeals stated that, where prison staff preclude an inmate from utilizing the institution's administrative remedies, they cannot be considered "available" for exhaustion purposes. *Smith v. Federal Bureau of Prisons Director,* 406 Fed. Appx. 578 (3d Cir. 2011) (citing *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003); *Brown v. Croak,* 312 F.3d 109, 111, 112 (3d Cir. 2002)). The Court then stated as follows: "Here, however, the record establishes that Smith filed numerous grievances, militating against a conclusion that he was precluded from utilizing the administrative process. The vague, unsubstantiated allegations in Smith's complaint cannot overcome that conclusion." *Id.* (citing *Pa. Prison Soc'y v. Cortes,* 508 F.3d 156, 161 (3d Cir. 2007) ("[w]hile generalized allegations of injury may suffice at the pleading stage, a plaintiff can no longer rest on such 'mere allegations' in response to a summary judgment motion, but must set forth 'specific facts' by affidavit or other evidence.")).

Plaintiff has not successfully demonstrated that Defendants made administrative remedies unavailable to him so as to show that there is a genuine issue of material fact as to his failure to exhaust administrative remedies regarding his retaliation claim. Rather than showing that his efforts to exhaust were thwarted by Defendants, the exhibits instead reveal that in the instances in which Plaintiff failed to follow proper procedure, Defendants

justifiably rejected his submissions. As outlined above, several of Plaintiff's administrative
remedies were rejected as untimely, incorrectly filed, in poor condition, and unable to be
processed. Plaintiff was specifically advised to be counseled by his unit manager with
respect to proper procedures of the administrative remedy process. Further, Plaintiff has
successfully utilized the administrative remedy procedure to fully exhaust other claims.
Thus, there is no logical or evidentiary basis for Plaintiff's claim that staff at FCI-Allenwood
were thwarting his efforts to comply with the exhaustion procedure.

Moreover, as Plaintiff's retaliation claim primarily relates to Defendant Smoker, the
Court again notes that there is no record of any specific complaint filed by Plaintiff against
Defendant Smoker. *See* (Doc. 67-1, Ex. D, Declaration of Michael S. Romano, p. 12, ¶¶ 8,
9). However, the grievances set forth above have been interpreted broadly to encompass
any possible complaints resulting from the alleged retaliation. Despite this broad
interpretation, the Court finds that Plaintiff has nonetheless failed to exhaust.

Consequently, there is no genuine issue of material fact as to Plaintiff's failure to
exhaust administrative remedies regarding his retaliation claim, and Defendants therefore
are entitled to judgment as a matter of law on the basis of failure to exhaust administrative
remedies. *See Wallace v. Miller*, 544 Fed. Appx. 40 (3d Cir. 2013) (prisoner's
administrative remedy requests were rejected for failure to comply with prison procedures,
thus prisoner did not properly exhaust his administrative remedies prior to filing suit as

required under the PLRA and defendants were therefore entitled to summary judgment).

## D.    Failure to Establish a Retaliation Claim

Defendants infer that if this Court does not enter summary judgment on Plaintiff's retaliation claim for failure to exhaust, they are nevertheless entitled to judgment as a matter of law on the retaliation claim. (Doc. 68, pp. 21-25).

To establish a retaliation claim, a prisoner must prove: (1) "the conduct which led to the alleged retaliation was constitutionally protected"; (2) "he suffered some 'adverse action' at the hands of the prison officials"; and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him". *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). A "prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim." *Wicker v. Shannon*, 2010 U.S. Dist. LEXIS 99777, *19-20 (M.D. Pa. 2010) (Caputo, J.) (dismissing all but one retaliation claim), *citing Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). To satisfy the second *Rauser* requirement, the prisoner must demonstrate "that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" *Rauser*, 241 F.3d at 333 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)); *Mack v. Yost*, 427 Fed. Appx. 70, 73 (3d Cir. 2011) (finding that the loss of prison employment may be a sufficient deterrent). To show a causal link, a prisoner must prove "that his constitutionally protected conduct was 'a substantial or motivating factor' in the

decision to discipline him." *Rauser*, 241 F.3d at 333; *Conklin v. Warrington Twp.*, 2009 U.S. Dist. LEXIS 36256, \*12 (M.D. Pa. 2009) (Conner, J.) ("To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act."), *citing Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). "The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events." *Royster v. Beard*, 2008 U.S. Dist. LEXIS 56764 (M.D. Pa. 2008) (Caputo, J.) (citing *Lape v. Pennsylvania*, 157 Fed. Appx. 491, 498 (3d Cir. 2005)).

"Once the initial showing is made by the prisoner, the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological interest." *DeFranco v. Wolfe*, 387 Fed. Appx. 147, 154-55 (3d Cir. 2010) (citing *Rauser*, 241 F.3d at 334). The "courts should afford deference to decisions made by prison officials." *Rauser*, 241 F.3d at 334.

Plaintiff's ability to file grievances is a protected activity for purposes of a retaliation claim. *See Wicker*, 2010 U.S. Dist. LEXIS 99777 at \*19-20. Also, his employment termination is an adverse action. *See Manning v. Flock*, 2012 U.S. Dist. LEXIS 44955, \*32 (M.D. Pa. 2012) (Conner, J.) (finding that "in order to establish adverse action, an inmate

32

must have been removed from his job...."), *citing James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989). But, Plaintiff has not established a causal connection between his protected activity and the adverse action. *See Celotex*, 477 U.S. at 324 (holding that, to avoid summary judgment, the nonmoving party must produce evidence to show the existence of every element essential to its case).

"To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Barr v. Feild, et al.*, 2012 U.S. Dist. LEXIS 15648, *6 (E.D. Pa. 2012). "The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element." *Conklin*, 2009 U.S. Dist. LEXIS 36256 at *12 (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)). "For temporal proximity alone to establish causation, the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Conklin*, 2009 U.S. Dist. LEXIS 36256 at *13 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

The time difference between Plaintiff's complaints about his workplace environment in 2008 and 2009, and his employment termination in 2010, is not "unusually suggestive." *See Smith v. ABF Freight Sys.*, 2007 U.S. Dist. LEXIS 79801 (M.D. Pa. 2007) (Conner, J.)

(granting summary judgment because the one and a half month time difference between the plaintiff's protected activities and the corresponding adverse employment actions "is not so unduly suggestive as to give rise to an inference of causation"). "In the employment context, the Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, whereas a temporal proximity of ten days", without more, is insufficient to establish causation. *Conklin*, 2009 U.S. Dist. LEXIS 36256 at *13 (stating that "ten days is sufficient to establish causation only when accompanied by other evidence of an employer's wrongdoing"). "This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence." *Id.* This Court finds that the one (1) to two (2) year delay between the filing of Plaintiff's complaints concerning his workplace environment and the alleged retaliatory job termination is not "unusually suggestive."

In cases where the temporal proximity is not so close as to be unduly suggestive, the Third Circuit Court of Appeals has "recognized that 'timing plus other evidence may be an appropriate test....'" *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that three weeks between the plaintiff's protected conduct and the termination letter was not "unusually suggestive"), *quoting Estate of Smith*, 318 F.3d at 512. However, Plaintiff has not offered any other evidence that the incident report was influenced by retaliatory motives. Notably, the evidence submitted reveals that Plaintiff committed the

34

prohibited acts that he was charged with on October 15, 2010. The incident report reveals that Plaintiff admitted that he did not return his chisel and admitted that he informed staff that all of his tools were returned, when in fact they were not returned. (Doc. 67-1, Ex. A, Attach. 1, Incident Report, at Sections 17, 24). Although Plaintiff states that he "inadvertently" left the chisel in his toolbox, he did indeed fail to return all of his tools. A statement from the UNICOR foreman submitted as evidence during the investigation provides the following: "I was present at the UNICOR exit when Inmate Wilkerson ... was leaving UNICOR for a visit. Mr. Smoker asked inmate Wilkerson if his tools were turned in. Inmate Wilkerson responded 'yes they are.'" (Doc. 67-1, Ex. A, Attach. 2). Plaintiff claims that he did not intend to lie to prison staff and his false statement was due to a mere "memory lapse". (Doc. 1, pp. 5, 7).

Upon consideration of this evidence, the Unit Discipline Committee determined that Plaintiff committed the prohibited acts of failing to perform work as instructed, in violation of Code 311, and lying or providing a false statement to a staff member, in violation of Code 313. (*Id.* at Section 18). Plaintiff does not provide other evidence that the decision to terminate him from his work assignment was retaliatory. *See Davila-Bajana v. Holohan,* 309 Fed. Appx. 606, 610 (3d Cir. 2009) (inmate's evidence that he "does not subjectively believe" that his violation of a prison rule (i.e., the discovery of an unauthorized piece of scrap material near his workstation) was the real reason for his dismissal from his UNICOR

job, was held insufficient to avoid summary judgment on his retaliation claim); *Killen v. Northwestern Human Servs.*, 2007 U.S. Dist. LEXIS 66602, *26-28 (E.D. Pa. 2007) (finding that approximately six weeks between the protected conduct and the plaintiff's termination was not "unusually suggestive" and must be supported by "some other evidence to support a causal link"). Summary judgment will therefore be entered in favor of Defendants on Plaintiff's retaliation claim. *See Fischer v. Transue*, 2008 U.S. Dist. LEXIS 64818, *30 (M.D. Pa. 2008) (Conner, J.) (granting summary judgment because twenty-two days was insufficient to establish causation and there was no other evidence to give rise to an inference of causation), *quoting Estate of Smith*, 318 F.3d at 512.

Even if Plaintiff had stated a prima facie case of retaliation, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. Where there is a finding of guilt of the underlying misconduct, an inmate fails to meet prong three of the *Rauser* test. *Romansky v. Stickman*, 147 Fed. Appx. 310 (3d Cir. 2005), *citing Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (explaining that a finding that the inmate actually committed the misconduct "essentially checkmates his retaliation claim"), *cert. denied*, 515 U.S. 1145 (1995). Retaliatory discipline claims fail when there is "some evidence" supporting a guilty finding for the charges. *Nifas v. Beard*, 374 Fed. Appx. 241, 243 (3d Cir. 2010).

Plaintiff was found guilty of the underlying disciplinary charges following a full investigation and UDC hearing. This finding of guilt meets the Defendants' burden to show that the charges were brought due to legitimate penological reasons, and not due to retaliatory animus. *See Mearin v. Dohman*, 553 Fed. Appx. 60 (3d Cir. 2013) (defendants were entitled to summary judgment on retaliation claim by meeting their burden of showing, as a matter of law, that even in the absence of the alleged protected conduct, charges would have been brought against inmate for reasons reasonably related to a legitimate penological interest). Defendants have presented legitimate, non-retaliatory reasons that the incident report would have been issued even in the absence of protected activity. Defendants assert that there is legitimate penological interest in enforcing the rules regarding the handling of tools in the UNICOR factory. (Doc. 68, p. 25). Plaintiff's failure to return his tool as required created a legitimate concern that the unaccounted for tool could enter the general prison population and be used as a weapon or escape device. (Doc. 67-1, Ex. A, Declaration of R. Smoker, p. 2, ¶ 3). Consequently, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

E.      *Defendants are entitled to Qualified Immunity*

Finally, even if Plaintiff had stated a colorable claim for any actions relating to his retaliation claim, Defendants are nevertheless entitled to qualified immunity. Plaintiff's brief in opposition to Defendants' motion does not address the qualified immunity argument. *See*

(Doc. 69).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.). This doctrine "provides not only a defense to liability, but "immunity from suit." *Milhouse v. Gee*, 2011 U.S. Dist. LEXIS 91749, *25 (M.D. Pa. 2011) (Rambo, J.) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "[I]n reviewing a motion for summary judgment on the basis of qualified immunity, normal principles of summary judgment still apply, and any disputes of fact must be resolved in favor of the plaintiff." *Estate of Smith v. Marasco*, 430 F.3d 140, 148 n.3 (3d Cir. 2005).

"[C]laims of qualified immunity are to be evaluated using a two-step process." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). First, the Court must determine "whether 'a constitutional right would have been violated on the facts alleged' and, if so, whether the right was 'clearly established.'" *Kelly v. Borough of Carlisle*, 544 Fed. Appx. 129, 134 (3d Cir. 2013) (quoting *Saucier*, 533 U.S. at 200-01). However, the Court is no longer required to conduct these two inquiries sequentially. *Pearson*, 555 U.S. at 239-41. "[C]ourts may look to whether the law

38

prohibiting a defendant's conduct was clearly established without first determining whether there was a constitutional violation under the circumstances presented." *Kelly*, 544 Fed. Appx. at 134 (citing *Pearson*, 555 U.S. at 236). If the right was clearly established, "then a court must inquire as to 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Carvalho v. Bledsoe*, 2012 U.S. Dist. LEXIS 137937, *37 (M.D. Pa. 2012) (Conaboy, J.) (quoting *Saucier*, 533 U.S. at 201).

In the present matter, Plaintiff's constitutional claim rests upon the alleged false incident report and retaliatory termination in 2010 for filing complaints against Defendant Smoker in 2008 and 2009. Reasonable corrections officials could not have recognized that writing an incident report against an inmate for failure to return a tool, and then lying to prison staff about returning the tool, would support a constitutional claim. Defendant Smoker simply could not have recognized that the action of writing an incident report would violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Doe v. Delie*, 257 F.3d 309, 318 (3d Cir. 2001). Additionally, as determined herein, there are no allegations of the personal involvement of Defendants Samuels and Solomon, thus there is no evidence that they engaged in clearly unlawful conduct. Consequently, Defendants are entitled to qualified immunity.

## VI.   CONCLUSION

Based on the foregoing discussion, the motion to dismiss filed on behalf of Defendants Samuels and Solomon will be granted.  Defendant Samuels will be dismissed for lack of personal jurisdiction and Defendant Solomon will be dismissed for lack of personal involvement.

Defendants' motion for summary judgment will be granted as to the remaining Defendant, Smoker.

An appropriate Order follows.

Date: March 24, 2015

Robert D. Mariani
United States District Judge

40